IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **114 KIMBELL SQUARE, LTD.,** | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. **3:05-CV-2363-L** |
| | § | |
| **DEEN ERWIN RITTER, and** | § | |
| **VERDA LORIE RITTER,** | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Appellant's appeal of the bankruptcy court's order granting in part Defendants' (Appellees') motion to dismiss Appellant's complaint to the bankruptcy court. The complaint, brought by 114 Kimbell Square, Ltd. ("Appellant" or "114 Kimbell") as an adversary proceeding, sought denial of discharge of a debt incurred by Appellees Deen and Verda Ritter ("Appellees" or "the Ritters") through alleged fraud and other misconduct. The issue presented on appeal is whether the bankruptcy court erred in granting the Ritters' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, because, in a binding arbitration related to the underlying indebtedness, the arbitrator granted 114 Kimbell's claims under the Texas Deceptive Trade Practices Act ("DTPA"), but denied claims for fraud, negligent misrepresentation, conversion, exemplary damages, and treble damages. After careful consideration of the briefs, the record on appeal, and the applicable law, the court **affirms in part** and **reverses in part** the bankruptcy court's decision, and **remands** to the bankruptcy court for proceedings consistent with this order.

**Memorandum Opinion and Order – Page 1**

I. **Procedural and Factual Background**

The current bankruptcy dispute arises from an earlier construction dispute in which 114 Kimbell made multiple claims against Appellee Deen Ritter, including fraud and misrepresentation. In 1999, 114 Kimbell contracted with Appellee Deen Ritter and Ritter's company to design and construct a strip shopping center in Southlake, Texas.[1]  Upon construction, a leaky roof and damages resulting from the leaks led to a dispute between the parties and, eventually, a binding arbitration before the American Arbitration Association Construction Industry Tribunal.  In the arbitration proceeding, 114 Kimbell made claims against Deen Ritter for breach of contract, breach of warranty, DTPA, fraud, negligent misrepresentation, and conversion.  In December 2004, the arbitrator found against Deen Ritter on several claims and awarded 114 Kimbell $324,330.89 plus costs.

The arbitrator's Findings of Fact and Conclusions of Law ("Award") set forth many findings that support an award to 114 Kimbell for breach of contract and warranty.  For example, the arbitrator found that the shopping center's design called for a new three-inch, standing seam metal roof to be installed with clips and fitted together with no exposed fasteners. Award 4.  Instead, Deen Ritter built a part-metal roof with more than 3,000 exposed fasteners that led to numerous leaks, leading the arbitrator to conclude that 114 Kimbell "did not get the roof they contracted for." *Id.* at 4-5.  The Award addressed the damages attributable to the breaches of contract and warranty claims by accounting for payments and credits, itemizing the reasonable costs for repairs in ten different categories, and specifically denying claims for repairs in several other categories that the arbitrator considered outside the scope of the contract.  The Award was based upon 114 Kimbell's

---

[1]According to the arbitration Award, there were two contracts, an Architect Agreement and a Construction Agreement.  Appellee Deen Ritter signed the contracts in his individual capacity.  Appellee Verda Ritter took no part and had no role in the execution or performance of these contracts.

**Memorandum Opinion and Order – Page 2**

contract, warranty, and DTPA claims, but the arbitrator denied 114 Kimbell's claims for fraud, negligent misrepresentation, conversion, exemplary damages and treble damages:

> As set forth above, 114 Kimball Square, Ltd. shall recover from Deen Ritter and D.E. Ritter Architects, Inc., jointly and severally, on its Breach of Contract Claim, Breach of Warranty Claims, and DTPA Claim, the sum of $174,330.89 plus reasonable attorneys' fees of $150,000.00 for a total recovery of $324,330.89.
>
> 114 Kimball Square, Ltd.'s claims for Fraud, Negligent Misrepresentation, Conversion, Exemplary Damages, and Treble Damages are **denied**.

*Id.* at 7 (emphasis added).

Two months after the arbitrator issued the Award, on February 2, 2005, the Ritters each filed for Chapter 7 bankruptcy, and sought to discharge the debt Deen Ritter owed to 114 Kimbell. On July 5, 2005, 114 Kimbell filed the complaint in the adversary proceeding seeking denial of the discharge, pursuant to several provisions: 11 U.S.C. §§ 523(a)(2), (4) and (6), and 11 U.S.C. § 727. 114 Kimbell moved pursuant to section 523 to prevent the Ritters from discharging the Award. Specifically, 114 Kimbell argued that the Award should not be discharged because it was obtained by "false pretenses, a false representation, or actual fraud"[2]; "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"[3]; or "for willful and malicious injury by the debtor to another entity or to the property of another entity."[4] Under section 727, a general discharge of all debts under Chapter 7 may be denied for a number of reasons, such as fraudulently making a false oath or account in connection with the bankruptcy case. 11 U.S.C. § 727(a)(4). In this case, 114 Kimbell alleged in its complaint that discharge should be denied because, during the

---

[2] 11 U.S.C. § 523(a)(2).

[3] 11 U.S.C. § 523(a)(4).

[4] 11 U.S.C. § 523(a)(6).

**Memorandum Opinion and Order – Page 3**

course of the construction project, Deen Ritter (and his company) made false representations regarding the use of skilled subcontractors, and made false representations to in order to draw funds, among other claims of wrongdoing.

In response to 114 Kimbell's complaint, the Ritters filed a motion to dismiss on several grounds: (1) the complaint stated no valid claim under sections 523(a)(4) and (6) for willful and malicious injury, or for embezzlement, and failed to allege any fact supporting such claims; (2) the complaint's allegations of fraud under section 523(a)(2) against Deen Ritter had already been tried in an arbitration that resulted in no finding of fraud; (3) the complaint stated no claim against Verda Ritter; and (4) the complaint stated no specific ground for relief under section 727.

The bankruptcy court, without stating its reasons, granted, in part, the Ritters' motion by dismissing 114 Kimbell's complaint "as to all counts under Section 523." Bankruptcy Order, October 26, 2005. The bankruptcy court denied the Ritters' motion to dismiss the complaint on 114 Kimbell's section 727 claim, and gave 114 Kimbell additional time to replead its claim under section 727 with more specificity. On appeal, 114 Kimbell states that it "has chosen to no longer pursue the section 727 claim in this case," and does not contest the bankruptcy court's order on that claim. Accordingly, the claims under section 727 are no longer before the court, and the only issue before the court is whether the bankruptcy court erred in dismissing 114 Kimbell's section 523 claims for failing to state a claim.

## II. Legal Standards

### A. Standard of Review

In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are

**Memorandum Opinion and Order – Page 4**

reviewed for clear error, and its conclusions of law *de novo*. *See Robertson v. Dennis* (*In re Dennis*), 330 F.3d 696, 701 (5th Cir. 2003); *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.*), 208 F.3d 498, 504 (5th Cir.), *cert. denied*, 531 U.S. 871 (2000). In this case, as the bankruptcy court ruled, as a matter of law, on a 12(b)(6) motion to dismiss, the decision is reviewed *de novo*.

      B.      **Motion to Dismiss–12(b)(6) Failure to State a Claim**

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to

**Memorandum Opinion and Order – Page 5**

[the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

  C. **Res Judicata, Collateral Estoppel and Fraud Claims in Bankruptcy**

Unlike other forums where *res judicata* precludes a court from deciding issues that could have been litigated in a previous proceeding, *res judicata* will not prevent a bankruptcy court from determining whether an alleged fraud may prevent a discharge, even if the allegation could have been raised in an earlier proceeding. *See Brown v. Felsen*, 422 U.S. 127, 138-39 (1979). Similarly, under the even narrower principle of collateral estoppel, a bankruptcy court may, under certain circumstances, still determine whether a claim of fraud will prevent a discharge, even if the fraud claim was already raised in an earlier proceeding. *See id.* at 139 n. 10; *Archer v. Warner*, 538 U.S. 314, 322-23 (2003); *accord Grogan v. Garner*, 498 U.S. 279, 285 (1991). If, however, "in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of [the Bankruptcy Act][5], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." *Brown*, 422 U.S. at 139 n. 10. Stated another way, a bankruptcy court "could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required

---

[5]*Brown* was decided under the Bankruptcy Act of 1970, applying section 17, but the Court noted that the discharge provisions applicable in section 17 are substantially similar to section 523 of the current law. *Brown*, 422 U.S. 127 at 129 n.1.

**Memorandum Opinion and Order – Page 6**

for discharge and which were actually litigated and determined in the prior action." *Grogan*, 498 U.S. at 284 (holding that fraud need not be proved by clear and convincing evidence in bankruptcy if the identical elements of fraud were already established by a preponderance of the evidence in a prior proceeding). The Fifth Circuit elaborated on this by holding that:

> [c]ollateral estoppel applies in bankruptcy courts only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question–that is an issue which encompasses the same prima facie elements as the bankruptcy issue–and facts supporting the court's findings are discernible from that court's record.

*Dennis v. Dennis* (*In re Matter of Dennis*), 25 F.3d 274, 278 (5th Cir. 1994)

As the Supreme Court has reasoned, a debtor has no constitutional or fundamental right to a discharge in bankruptcy. *Grogan* , 498 U.S. at 286 (internal citations omitted). Rather, discharge in bankruptcy rests on a congressional policy to grant a "fresh start" to the "honest but unfortunate debtor." *Id.* at 287. In passing bankruptcy laws,[6] Congress made dischargeability a matter of federal law to be determined by a bankruptcy court, even if the *validity* of a creditor's claim is determined by the rules of state law. *See Grogan,* 498, U.S. at 283-84; *see also Dennis*, 25 F.3d at 277-78. The Bankruptcy Code's non-dischargeability provision originally covered only "judgments sounding in fraud," but Congress's later change of the language to cover all such "liabilities . . . indicated that Congress intended the fullest possible inquiry [into the nature of the debt] to ensure that all debts arising out of fraud are excepted from discharge, no matter what their form." *Archer*, 538 U.S. at 321 (internal quotations and citations omitted). The "mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the

---

[6]This includes the Bankruptcy Act, which was passed in 1970, and the later Bankruptcy Code passed in 1979.

**Memorandum Opinion and Order – Page 7**

debt." *Brown*, 422 U.S. at 138. A bankruptcy court, therefore, "is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of" a debt. *Id.*

### III. Analysis

In this case, Appellant 114 Kimbell argues that, because the Ritters moved for dismissal under 12(b)(6), they had the burden of establishing the preclusive effect of the arbitration Award, but failed to do so. Specifically, 114 Kimbell argues that the single line from the Award addressing fraud– "114 Kimball Square, Ltd.'s claims for Fraud, Negligent Misrepresentation, Conversion, Exemplary Damages, and Treble Damages are denied"–does not contain the factual findings necessary to support a bankruptcy court's determination of dischargeability. Brief of Appellant ("Appellant Br.") at 14. The Ritters, on the other hand, argue precisely the opposite–that collateral estoppel bars 114 Kimbell's fraud claims because the arbitrator made no fact findings supporting fraud or misrepresentation. *See* Brief of Appellees ("Appellees Br.") at 8. The Ritters argue that the "Arbitrator made specific, subordinate factual findings on the issues in question and the facts supporting the award are discernable from the record." *Id.*

While the Award addresses the fraud claim in a single sentence, it is clear that the arbitrator heard evidence on the parties' claims and reviewed the parties' briefing prior to issuing his decision. Award 1. The findings of fact and conclusions of law relate entirely to whether the contracts were performed; not a single finding of fact finds any fraudulent act or misrepresentation. Award 1-7. Appellant does not argue that it was denied an opportunity to litigate its fraud claims in the arbitration proceeding, but rather that Appellee has failed to meet the legal standard for a motion to dismiss based upon the Award.

**Memorandum Opinion and Order – Page 8**

While it is true that the Supreme Court has held that in some circumstances, a bankruptcy court may look beyond a judgment or settlement to determine if a section 523 exception has been met, these cases can be distinguished from the instant case, where the arbitrator made extensive findings of fact and specifically denied the fraud claim. In *Brown*, the court considered a stipulated settlement and judgment, and noted that "[n]either the stipulation nor the resulting judgment indicated the cause of action on which respondent's liability to petitioner was based." 442 U.S. at 128. In *Archer*, the Court considered whether a bankruptcy court may look beyond a settlement to determine if a creditor had a valid section 523 fraud claim. In that case, the debtors were sued for money that the creditor alleged was obtained through fraud. 538 U.S. at 316-317. The original lawsuit was settled, and the agreement characterized the settlement "as compensation for emotional distress/personal injury type damages." *Id*. at 317. The debtors thereafter failed to make payments under the settlement agreement and then filed for bankruptcy. *Id*. at 317-318. In *Archer*, the Court noted, "The only difference we can find between *Brown* and the present case consists of the fact that the relevant debt here is embodied in a settlement, not in a stipulation and consent judgment. But we do not see how that difference could prove determinative." *Id*. at 321. The Court went on to state: "what has *not* been established here, as in *Brown*, is that the parties meant to resolve the *issue* of fraud or, more narrowly, to resolve that issue for purposes of a later claim of nondischargeability in bankruptcy." *Id*. at 322 (emphasis in original).

The court determines that this case, involving an arbitration award that specifically denies the fraud claim, is distinct from the situations before the Supreme Court in *Brown* and *Archer*. Here, it is clear that 114 Kimbell raised the fraud claim in the arbitration proceeding and that the arbitrator found reason to deny it. Although 114 Kimbell asks the court to look beyond the Award, the court

believes the clear denial of the fraud claim establishes that the arbitrator necessarily considered the claim and found that all elements of a fraud claim were not present, and thus reason existed to deny it. Appellant points to the arbitrator's statement that "payment of the Award to 114 Kimbell . . . satisfies all of the damage asserted in the arbitration that either 114 Kimbell . . . or Dan Matise might have against Respondents *in contract or tort* related to the Project." Award 7 (emphasis added). Appellant then speculates that the arbitrator determined that it need not consider the fraud claim because no additional damages were available under that claim. The court's reading of this cited language, coupled with the arbitrator's granting Appellant's claims on contract and tort theories while denying the fraud claim, is that the arbitrator had *considered and denied* the fraud claim.

The court finds that this case is similar to two cases before bankruptcy courts in this circuit. In *In re O'Neill*, a bankruptcy court in the Eastern District of Texas held that an unconfirmed arbitration award could be the basis for *res judicata* under section 523. 260 B.R. 122 (E.D. Tex. 2001). That court considered the arbitrator's award and stated that a hearing was held, that the parties provided arguments, evidence, and testimony, ant that the award made specific findings regarding the claims before it. *Id*. at 125, 127. The court concluded:

> collateral estoppel is appropriate in this case because Texas law would give the arbitration award preclusive effect: the three *Bonniwell* [*v. Beech Aircraft Corp.*, 663 S.W.2d 816 (Tex. 1984)] elements have been met, i.e. (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action as judicially defined in the Fifth Circuit jurisprudence; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in this first action.

*Id*. at 127. A similar result was found by a bankruptcy court in this district. *In re Marx*, 171 B.R. 218 (N.D. Tex. 1994). Although in those cases the court denied discharge of the underlying debts, the court determines that the reasoning regarding the preclusive effect of the arbitration award

should be similar here; that is, the court concludes that the arbitrator's determination denying the fraud claim precludes the retrial of this claim in the bankruptcy court.

Accordingly, the court **affirms** the bankruptcy court's order dismissing 114 Kimbell's complaint pursuant to section 523(a)(2), which states that a debt may be discharged that was obtained by "false pretenses, a false representation, or actual fraud." 11 USC § 523(a)(2). The question remains, however, whether the bankruptcy court's dismissal of 114 Kimbell's claims pursuant to sections 523(a)(4) and (6) was correct.

The bankruptcy court did not make specific findings in its order granting the motion to dismiss, and the transcript of the bankruptcy court's hearing does not explain the bankruptcy court's rationale for dismissing these claims. Section 4 prevents a discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" and section 6 "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 USC §§ 523(a)(4), (6). The court determines that while the arbitrator's decision to deny the fraud claim is sufficient under section 523(a)(2), this conclusion does not extend to 114 Kimbell's claims under sections 4 and 6 because there is no evidence that the arbitrator considered or ruled on these claims.

114 Kimbell alleged in its complaint that the Ritters "obtained money and property from [114 Kimbell] through . . . embezzlement and/or willful and malicious injury." Pl.'s Adversary Compl. ¶ 15. Appellant also alleges that Deen Ritter's construction of the roof "evidences willful and malicious conduct," and that payments made by 114 Kimbell to Deen Ritter for the payment of subcontractors was embezzlement. *Id.* ¶¶ 22-23, 26. Under the liberal standard of Rule 12(b)(6), the court concludes that 114 Kimbell has stated a claim pursuant to sections 523(a)(4) and (6).

**Memorandum Opinion and Order – Page 11**

Accordingly, the court **reverses** the bankruptcy court's order dismissing 114 Kimbell's complaint pursuant to sections 523(a)(4) and (6).

### IV.    Conclusion

For the reasons stated herein, the court **affirms** the bankruptcy court's order dismissing 114 Kimbell's complaint pursuant to section 523(a)(2) and **reverses** the bankruptcy court's order with regard to sections 523(a)(4) and (6). This matter is hereby **remanded** to the bankruptcy court for proceedings consistent with this order.

**It is so ordered** this 8th day of June, 2007.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge